Good morning, Your Honors. Steve Lathrop on behalf of Mr. Calderon. I think I can do this in 10 minutes. What I'd like to do is point to the Court. That would be a good idea, since that's what you've got, Your Honor. I'd like to start by pointing the Court to four conclusions that the Court of Appeal reached, the California Court of Appeal reached, and show that the Court, that those four conclusions were clearly erroneous by then going to the Cal Jury Instructions and also the argument of the prosecutor. On Exeter's record, page 544, this is the Court of Appeal opinion, page 17. The first conclusion that the California Court of Appeal reaches is that we conclude that the trial court should have given a modified version of Appellant's proposed instruction regarding antecedent threats, and that it then states how it should have modified, the trial court should have modified that instruction, and it states that it should have modified it in such a way that it would have only applied to Montiel, that the threats wouldn't have applied to Perez. Perez didn't make the threats, but, of course, on that, in that July incident, Petitioner Calderon reasonably understood that that was Montiel that was driving the vehicle. So, one, the manner in which the Court of Appeal concluded that the trial court should have altered the defense counsel's or modified the defense counsel's instruction was erroneous, and I'll get to that more clearly when I get to the instructions. The second, on page 545 of the Exeter's records, the Court of Appeal says, in view of the panoply of Cal Jury Instructions regarding self-defense, we conclude that it is not reasonably probable that Appellant would have obtained a more favorable result. Not true. And I'll explain that very concisely when we review the Cal Jury Instructions. Number three, the Court of Appeal concluded that the Cal Jury Instructions should have been modified. And I'll get to that more clearly when I get to the instructions.    And number five, the Court of Appeal concluded that the Cal Jury Instructions were violated when the jury was instructed on self-defense to a fairly well. That's really the question, isn't it? Yes, Your Honor. The question is, but the – in answering that question, we have to turn then to the instructions. And the problem with the instructions, if you look at the government's Exeter's record at page – starting at page 3, we have instructions on self-defense of homicide. He was not charged with homicide. Count 4 was an attempted murder. And the rest of the charges, save one, were assault with a firearm. If you look at page – starting at page 3 of the government Exeter's record, Cal Jury 5.10, and these are the ones that are cited by the Court of Appeal in saying that the – there was no harmless – there was harmless error in failing to instruct on antecedent threats. Well, Cal Jury 5.10 says, Homicide is justified and not unlawful when committed by any person who is resisting an attempt to commit a forcible or atrocious crime. There's no homicide here. Okay. That doesn't apply. I mean, the next one is a forcible or atrocious crime. That refers to homicide. Well, there's no homicide here. The next one, page – page 3 of the government Exeter, talks about justifiable homicide and self-defense. And it talks about a reasonable person. Okay. We're not talking about the antecedent threats. Not only does this instruction, which is red, deal with – Is it your argument then that the jury must have said to itself, oh, gosh, self-defense is only good as a homicide, but he only tried to kill people, and so it must not be any good as to that. Is that your – is that your concern? The concern, Your Honor – The due process concern. The due process concern is that defense counsel requested, presented solid evidence that Calderon had been threatened by Montreal, threatened by – We're on a different – we're on a different page now. You said a moment ago that the problem with this is that it refers to homicide. There are other problems, too, you said. And in answer to my question, well, wasn't the jury instructed about self-defense to a fare-thee-well? And you said, oh, no, no, no, because it said homicide. So my question to you, is your point that it's a due process violation because a jury may have said to itself, well, gosh, this guy didn't kill anyone, so I guess none of these instructions apply? Is that your point? No, Your Honor. The point is, is that the instructions as a whole never – one never gave meaning to the – his – to Calderon's self-defense, to his defense of self-defense. It never gave meaning and never instructed the jury on the law of antecedent  And that was the crux. Did the jury ever express any confusion regarding that issue? No, they didn't. But, Your Honor, but the way that the prosecutor argued the case, it – and argued the law, actually, the way the prosecutor – the State argued the law to the jury, it excluded antecedents, for example, as a self-defense. And the – Well, the question of the prosecutor's argument is not before us on the COA. What's before us is whether the instructions were wrong.  And that's why I'm turning to the instructions. The instructions do say, among other things, that to justify taking the life of another – now, I realize this is taking the life, and he didn't quite manage that. In self-defense, it must be said to cite the fears of a reasonable person placed in a similar position. A reasonable person placed in his position who decided to gun down somebody on the freeway because the person was allegedly blocking his exit, although he really didn't want to be there. A reasonable person in his position includes what he knew, does it not? Well, it would seem that it would. But there – the instructions are conflicting in that regard. Because if you look at another instruction given to the jury, which is self-defense against assault, and there were – most of these were assaults with a firearm. One was the attempted murder. At Excerpt to Record 6 of the Government Excerpt to Record, it reads, That's not correct. That's under the – his defense was that he personally felt apprehension. And the California Supreme Court has ruled that self-defense looks to not the – because justification does not depend upon existence of actual danger, but depends upon appearances. That's the California Supreme Court. So the due process violation here is that it's not actual danger, but it's appearance to a reasonable person. It's true the courts have said that you can consider what the person subjectively knew, but the test is objective, is it not? No, it's not. No, it's not, Your Honor. I've got – I've cited on page 11 of the – of the opening – of my opening brief the California Supreme Court's decision in People v. Minifee at 13 Cal 4, 1055 and they explicitly state that it's not. It's the appearance. Now, the jury may find that the appearance – it's clearly the appearance. There's no question about it. Self-defense centers, right? Let me just – Appearance to whom? Not to the victim, but to the defendant. And the flaw that the courts – No, no. You're suggesting that if I write now, it appears to me that you're about to kill me. If I write this moment, because I don't like the way you're holding your hand toward your coat, I can pull out a gun and gun you down because it appears to me that way. I suggest to you that's not the law of California or any other place. Well, the appearance – I'm not suggesting that it's a whimsical – You are suggesting that because the question – the thing that makes it non-whimsical is that it has to so – I have to be reasonable. I have to appear so to a reasonable person knowing what I know. I know that you put your hand here and I decided to gun you down. A reasonable person would not do so. That's called objective. No. Well, I agree with what the Court is saying. I'm not trying to – I agree with what you – Well, then what's wrong with the standard that tells the jury that? Well, in reading Cal – Government Exhibit 6, Calject 5.30, it uses both an objective and a subjective standard. And it's not the law that Calderon has to have reasonably believed that bodily injury was about to be inflicted upon him. Under the – under California law, given the death threats that he had received from Montiel, he has a right to act more quickly in response, more quickly than an otherwise reasonable person. When I didn't say otherwise reasonable, why wouldn't that be reasonable? If, you know, if he received threats and he really believed this, a jury could find that was reasonable. I think that you're – I think the short answer is twofold. One, the instructions talk about homicide. I think that if you have to believe that the jury followed the instructions, you have to believe that they disregarded these homicide instructions. And especially the homicide – But we're on the reasonable point now, is it? What's wrong with telling them that it's got to be reasonable? You gave an example of why it would be reasonable. Well, I think the way the prosecutor, the State, argued the evidence and argued rather the instructions to the jury, the way the prosecutor argued those instructions, it did not focus. He argued that the jury instructions in some, and I can cite where that has occurred, in some he argued that it's not a matter of what Calderon believed. The prosecutor's argument is not part of the COA before us. And prosecutor's argument is a question of prosecutorial misconduct. It's not a question of whether the jury was properly instructed. Yes, Your Honor. But in looking at, in this Court, in reviewing the Talgic instructions and how those – how the jury may reasonably have understood those instructions, I think we can look to the State's argument. And certainly this is how the State interpreted the instructions, and if the State And I think that's the ultimate question, is how did the jury reasonably understand these Talgic, all the instructions, the panoply of instructions given, or the panoply of instructions that the State interpreted. Your 10 minutes is up. I'll save the extra time. Thank you, Your Honor. Thank you. May I please support Deputy Attorney General Anadarka for responding? As the Court has pointed out, whether a constitutional violation has occurred in this case depends on whether what the evidence presented was and what the overall instructions were. In this case, concededly, the trial court failed to instruct an axiom of threat. That was error, but it was not one of a due process or constituting a due process violation. Petitioner was not in any way prevented from presenting a meaningful defense, a thorough self-defense. The instructions, I counted at least 13 of them that went to self-defense. And they did talk about the reasonable person standard, which is what California law provides for. But specifically, the instructions themselves told the jurors to consider what Petitioner or what a reasonable person in Petitioner's situation or under similar circumstances with similar knowledge, what that person would do or would or if that person would be justified in exercising, in acting in self-defense. I think that Petitioner's argument that somehow the instructions would have led the jury to believe that they could not use the antecedent threats or the prior conduct between Petitioner and Mr. Montiel is clearly incorrect and not supported by the record. The Petitioner was allowed to present the evidence of the two prior assaults that Petitioner allegedly observed Mr. Montiel inflict upon two other people. They also heard evidence of a prior freeway chase of Mr. Montiel, of Petitioner. They also heard that Mr. Montiel had admitted to law enforcement that Petitioner had a reason to be afraid of him. All that evidence, in conjunction with the instructions given to the jury regarding self-defense, would have led them to consider properly his self-defense theory. And clearly, they just rejected it. And if we even reach the arguments at counsel for any reason, it would be, I think, simply if this Court were to decide, well, yes, there was a constitutional error. Let's look to see if there was – if it had a substantial and injurious effect on the jury's verdict. And in this case, I would subject or submit to you that both the prosecution's and the defense's closing arguments really pointed to the jury being able to consider all of the evidence. I would especially point you to defense counsel's argument, which mentioned CALJIC 5.51 at least six times. Well, you know, I'm not sure why, on a question of instructional error, we get involved with what attorneys happen to say, particularly when, I don't recall in this case especially, but normally judges say don't pay too much attention to the attorney's statements of the law. But if you really want to go there, what the prosecutor said wasn't exactly accurate, was it? About we're not interested at all in his subjective thoughts. We are somewhat interested in what he thought, aren't we? On what Petitioner thought, you mean? Excuse me? You're asking we are interested in what Petitioner believed? Is that what the question is? We're interested in what's in his mind to some extent or what might be in his mind, are we not? Yes, but if you look to one of the last things that the prosecutor said in rebuttal, it told the jury when you determine what a reasonable person in the same or similar or it directed the jury to think about what a reasonable person in the same or similar circumstances would believe that the adult is likely to inflict great bodily injury. I mean, that's a direct quote taken out of context, but it is he did say that in rebuttal, and I think it was pointing the jury to all of the evidence or all of the information that Petitioner had when he acted on June 21st, the first incident, the second incident on the freeway, and then when he acted in the counts against Mr. Perez, which were in July. And as the Court says, usually you give less weight or maybe no weight to what counsel has said and the greater weight is to what the judge has instructed, because we presume that jurors do follow the Court's instructions. Well, in this case, the self-defense instructions should be broadly construed to have included the jury's ability to consider all of those prior contacts between Petitioner and Montiel. As the district court found, and I'll quote, the instructions as a whole focused the jury's attention on the circumstances of the confrontation between Petitioner and Montiel, which, of course, included the prior threats on Petitioner's life and safety. I don't know how much more clearly it can be stated the self-defense instructions in this case were sufficient to present Petitioner's theory to the jury. That they rejected it is another matter, because unless the Court has any other questions, I would simply like to conclude by saying that Petitioner was, because he was allowed to present a full and meaningful defense, there was no constitutional violation. Therefore, you don't even reach the Brecht standard of prejudice. And if you did, then you'd have to consider all of the evidence before them, all of the instructions given, and find that he's not entitled to habeas relief, and therefore, the district court's judgment should be affirmed. Thank you, counsel. Thank you. The case is arguably submitted.
judges: Reinhardt, Fernandez, Rawlinson